RAMSDEN, MARFICE, EALY & HARRIS, LLP
700 Northwest Blvd.
P.O. Box 1336
Coeur d'Alene, ID 83816-1336
Telephone:    (208) 664-5818
Facsimile:     (208) 664-5884
Michael A. Ealy, ISB #5619
mealy@rmehlaw.com
Marcus E. Johnson, ISB #10350
mjohnson@rmehlaw.com

Attorneys for Defendants Thane and Rebekah Syverson

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IDAHO

| | |
|---|---|
| JACK CHRISTIANSEN and MARIE CHRISTIANSEN, husband and wife<br><br>Plaintiffs,<br><br>v.<br><br>THANE SYVERSON and REBEKAH SYVERSON, husband and wife, and DOES 1-10,<br><br>Defendants. | CASE NO.<br><br>**DEFENDANTS' NOTICE OF REMOVAL** |

COME NOW the Defendants Thane Syverson and Rebekah Syverson (herein "Syverson"), by and through their counsel of record Ramsden, Marfice, Ealy & Harris, LLP, pursuant to U.S.C. § § 1332, 1441(a), and 1446 and Local Civil Rule 81.1, and hereby gives notice of its removal of the above-styled matter from the District Court of the Second Judicial District of the State of Idaho in and for the County of Clearwater to the United States District Court for the District of Idaho, Northern Division.  In support of removal, Syverson states as follows:

DEFENDANTS' NOTICE OF REMOVAL - 1

**A.     Introduction**

1.      On or about August 28, 2019, Plaintiffs Jack Christiansen and Marie Christiansen commenced a civil action against Syverson in the District Court of the Second Judicial District of the State of Idaho in and for the County of Clearwater under Case No. CV18-19-0246.

2.      On September 5, 2019, a copy of Plaintiffs' Complaint and Demand for Jury Trial and Summons were sent to Syversons' counsel of record, via email.

3.      On September 5, 2019 an Acknowledgment of Service was filed by Plaintiffs in the District Court of the Second Judicial District of the State of Idaho in and for the County of Clearwater under Case No. CV18-19-0246. No other process, pleadings, orders, or other papers have been served on Syverson.

4.      Pursuant to 28 U.S.C. § 1446 and Local Civil Rule 81.1(a)(1), the Complaint is Attachment 1. The Acknowledgment of Service is Attachment 2. The state court docket is Attachment 3. There are no answers in the state court action. There are no pending motions in the state court action.

5.      As explained in detail below, this Court has original jurisdiction of this action based on diversity of citizenship and amount in controversy under 28 U.S.C. § 1332, and this action is removable under 28 U.S.C. § 1441(a).

**B.     This Removal is Timely.**

6.      This Notice of Removal is timely filed under 28 U.S.C. § 144(b) as the 30-day period began running no earlier than September 5, 2019, the date on which Syverson was first

DEFENDANTS' NOTICE OF REMOVAL - 2

served with a copy of the complaint and summons. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* 526 U.S. 344, 354 (1999).

**C.      Venue is Proper in this Court.**

7.      Venue properly lies in this United States District Court for the District of Idaho, Northern Division under 28 U.S.C. § 1391(a)(2) and 28 U.S.C. § 95(a)(2), as this Division of this District embraces the location of the Idaho state court where the state court action is currently pending.

**D.      Complete Diversity of Citizenship Exists.**

8.      This is an action between citizens of different states. An individual's citizenship is based on his or her domicile. *Luciano v. Chase Bank,* No. CV-13-7896-GAF-RZX, 2014 U.S. Dist. LEXIS 1712, at *3 (C.D. Cal. Jan. 7, 2017). An individual's domicile is his/her permanent home – where she resides with the intention to remain or to which she intends to return. *Id.* A representative of an estate's citizenship is based on the citizenship of the decedent. 28 U.S.C. 1332(c)(2).

9.      Plaintiffs are domiciled in Lenore, Idaho located within Clearwater County, Idaho. *See* Attachment 1, ¶ 1. As such, Plaintiffs are citizens of the State of Idaho.

10.      Defendants are domiciled in Roseburg, Oregon. *See* Attachment 1, ¶ 2. As such, Defendants are citizens of the State of Oregon.

11.      This is therefore an action between Idaho citizens and Oregon citizens.

**E.      The Amount in Controversy Requirement is Satisfied.**

12.      In addressing the amount in controversy, Syverson does not concede the validity of Plaintiffs' claims or attempt to predict what Plaintiff will recover. The amount in

controversy is determined by the amount demanded, not what will ultimately be recovered. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289-290 (1938).

13.     "[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actual recover that amount." *Cornell v. Columbus McKinnon Corp.*, No. C-13-02188-SI, 2013 U.S. Dist. LEXIS 100093, at *5 (N.D. Cal. Jul. 17, 2013).

14.     Plaintiffs' Complaint and Demand for Jury Trial seeks recovery of 'damages in an amount exceeding $10,000.00," *See* Attachment 1, ¶ 67.

15.     However, Plaintiffs sent multiple demand letters prior to commencing this litigation. Each demand letter contained a demand for payment exceeding this Court's jurisdictional limit of $75,000.00.

**F.     Notice**

16.     As required by 28 U.S.C. §1446(d), the written Notice or Removal is being served on all adverse parties, and a copy of the same is being filed with the District Court of the Second Judicial District of the State of Idaho in and for the County of Clearwater for this United States District Court for the District of Idaho, Northern Division and proceed as an action properly removed thereto.

//

//

//

//

DEFENDANTS' NOTICE OF REMOVAL - 4

**G.     Conclusion**

17.     For the reasons more fully set forth above, Defendants hereby give notice of the

removal of Christiansen v. Syverson, Clearwater County Case No. CV18-19-0246 to the United

States District Court for the District of Idaho, Northern Division, pursuant to U.S.C. § § 1332,

1441(a), and 1446 and Local Civil Rule 81.1.

DATED this 23 day of September, 2019.

                         RAMSDEN, MARFICE, EALY & HARRIS, LLP


                         By: _____
                               Michael A. Ealy, Of the Firm
                               Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2019, I served a true and correct

copy of the foregoing by the method indicated below, and addressed to the following:

Gregory M. George                          _____ US MAIL
Macomber Law, PLLC                         _____ Overnight Mail
1900 Northwest Boulevard, Suite 110        _____ Hand Deliver
Coeur d'Alene, ID 83814                    _____ Facsimile
*Attorney for Plaintiffs*                   __X__ Via email to:
                                                 greg@macomberlaw.com

P. Thomas Clark                            _____ US MAIL
Clark & Feeney, LLP                        _____ Overnight Mail
1229 Main Street, Suite 106                _____ Hand Deliver
P.O. Box 285                               _____ Facsimile
Lewiston, Idaho 83501-0285                 __X__ Via email to:
*Attorney for Plaintiffs*                        greg@macomberlaw.com

Nicole Vigil
_____
Nicole Vigil

**1**

Electronically Filed
8/28/2019 3:49 PM
Second Judicial District, Clearwater County
Carrie Bird, Clerk of the Court
By: Barbie Deyo, Deputy Clerk

Gregory M. George, ISB #9937
Macomber Law, PLLC
1900 Northwest Boulevard, Suite 110
Coeur d'Alene, ID 83814
Telephone: 208-664-4700
greg@macomberlaw.com
*Attorneys for Plaintiffs*
*Jack and Marie Christiansen*

P. Thomas Clark, ISB #1329
Clark & Feeney, LLP
1229 Main Street, Suite 106
P.O. Box 285
Lewiston, ID 83501-0285
Telephone: 208-743-9516
Facsimile: 208-746-9160
tclark@clarkandfeeney.com

## IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF CLEARWATER

| | |
|---|---|
| JACK CHRISTIANSEN and MARIE CHRISTIANSEN, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>THANE SYVERSON and REBEKAH SYVERSON, husband and wife, and DOES 1-10,<br><br>Defendants. | Case No.: CV18-19-0246<br>_____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Fee Category: A.A.<br><br>Fee: $221.00 |

COME NOW Plaintiffs JACK CHRISTIANSEN and MARIE CHRISTIANSEN, husband and wife, (collectively "Plaintiffs" or "Christiansens"), by and through their attorney, Gregory M. George of the firm Macomber Law, PLLC, to hereby allege a Complaint as follows.

### I.   PARTIES, JURISDICTION, AND VENUE

1.   Plaintiffs are owners of real property situated in Clearwater County, Idaho, said property having a situs address of 323 Barley Drive, Lenore, Idaho 83541 (the "Property"). The Property is twenty (20) acres.

2.   Defendants THANE SYVERSON and Rebekah Syverson ("Defendants" or "Syversons") are, on information and belief, residents of the State of Oregon.

FitzMaurice, Gregory

3. On information and belief, there are other persons who may be liable to Plaintiffs for all or part of Plaintiffs' claims herein. The name of such persons, as well as others yet unknown, are unknown and referenced above as DOES 1-10. This Complaint will be amended to include the names of such unknown persons upon discovery.

4. This Court has subject matter jurisdiction pursuant to Idaho Code section 1-705.

5. This Court has personal jurisdiction over Defendants pursuant to subsections (a) through (c) of Idaho Code section 5-514.

6. Venue is proper in the Second Judicial District, in and for the County of Clearwater, pursuant to Idaho Code section 5-401(1) and/or Idaho Code section 5-404.

7. The amount in controversy exceeds $10,000.

## II. FACTUAL ALLEGATIONS

8. Plaintiffs incorporate all prior paragraphs herein, inclusive.

9. The Syversons owned the Property from approximately June 11, 2004 to 2008.

10. On or about July 2, 2004, Syversons obtained a permit from Clearwater County to relocate an abandoned farmhouse located on the property of Earl Lawrence to the Property so the Syversons could make efforts to repair and/or remodel the farmhouse to become their primary residence.

11. A Clearwater County Idaho Residential Property Record dated February 12, 2001 for the house (while the house was still on Earl Lawrence's property) identified the house exterior walls as being 100% covered by asbestos siding.

12. The Syversons acquired the abandoned farmhouse from Earl Lawrence and moved the farmhouse to its current location on the Property.

13. Photographs obtained from the house-moving work show the asbestos siding on the house as referenced in the February 12, 2001 Clearwater County Idaho Residential Property Record. True and correct copies of said photographs are attached hereto as **Exhibit "A"** and incorporated herein. The house was in very poor condition, with the siding and roofing in disrepair and rot/structural damage on the northwest corner of the main floor bedrooms, as shown in the photograph attached hereto as **Exhibit "B."**

14. A Clearwater County Tax Assessment Report dated July 27, 2004 for the house (by that point located on the Syversons' Property) identified the house exterior walls as being 100% covered by asbestos siding. This conclusion was verified by photographs of the house after it was

moved to the Property. True and correct copies of said Clearwater County property records are attached hereto as **Exhibit "C."**

15.     During the Syversons' repair/remodel efforts on the house, they discovered vermiculite insulation in the lower attic above the bathroom and laundry room. However, the Syversons did not have said vermiculite abated.

16.     In or around 2005, and while the Syversons owned the Property, the asbestos siding was removed from the house by or with the knowledge and consent of the Syversons.

17.     During the Syversons' repair/remodel efforts on the house on the Property, they had a dump pit(s) dug on the Property in or around 2005 for the purpose of burying construction remnants—including asbestos-contaminated construction remnants. Upon information and belief, some of these remnants may also include lead paint.

18.     The Syversons attempted to burn the construction remnants—including asbestos-contaminated siding—in said dump pit(s) on the Property in or around 2005. These remnants, however, did not burn, and the Syversons had knowledge at the time that these remnants did not burn.

19.     There is an airstrip that has historically been used by neighboring landowners that runs partially through the Property. At the time the Syversons moved from the Property, there were at least two area landowners who were regularly using said airstrip for taking off and landing planes on the Property.

20.     At the time the Syversons moved from the Property, no formalized agreement existed for use, maintenance, or liability associated with said airstrip. The lack of such a formalized agreement had created ongoing issues between the landowners in the area regarding the use and maintenance of the airstrip.

21.     In 2007, Bennett Industries, Inc., an Idaho corporation ("Bennett"), was attempting to negotiate with neighboring landowners regarding a right to use the airstrip for its logging activities as well as for the development of properties Bennett owned immediately southeast of the Property.

22.     These negotiations between Bennett and neighboring owners failed. On or about March 31, 2008, legal counsel for Bennett sent a letter to neighboring owners threatening legal action regarding the right to use the airstrip for vehicle access to the Bennett property.

23.     Bennett filed suit against various neighboring owners, including Syversons, regarding the airstrip. Bennett filed this lawsuit on August 19, 2008 in Idaho state court as Clearwater County Case No. CV-2008-306. This case ended in November 2010.

24.     Defendant Thane Syverson is an employee of the federal Bureau of Land Management. On information and belief, his employment is as a District Engineer.

25.     Until 2008, Defendant Thane Syverson was an employee of the United States Forest Service working out of the Forest Service office in Orofino, Idaho. On information and belief, his Forest Service employment was in the area of civil engineering, consistent with his education and background.

26.     In 2007 or 2008, Syversons applied for the United States federal government's relocation assistance program in order for Thane Syverson to change his federal duty station from Orofino, Idaho.

27.     The Syversons' relocation was handled through Capital Relocation Services, LLC ("Capital").

28.     In the relocation process, the Syversons conveyed the Property to Capital, which in turn would attempt to find a buyer for the Property.

29.     As part of the relocation process, the Syversons completed and submitted to Capital a "Homeowner Disclosure Statement" in April 2008. A true and correct copy of said Homeowner Disclosure Statement is attached hereto as **Exhibit "D."** The Syversons signed the Homeowner Disclosure Statement on or about April 3, 2008. However, on page 1 the Homeowner Disclosure Statement is dated April 8, 2008.

30.     Said Homeowner Disclosure Statement prompted the Syversons to make various representations about the Property. The Homeowner Disclosure Statement expressly provides on page 1 that "[i]n connection with my/our relocation, I/we make the following disclosures to the best of my/our knowledge regarding my/our property with the knowledge that even though this is not a warranty, prospective buyers may rely on this information in deciding whether or on what terms to purchase the property. I/we further understand that an offer to purchase will not be made until this disclosure is completed." (Emphasis added). Based upon this language on page 1 of the Homeowner Disclosure Statement, Jack Christiansen reasonably believed the Homeowner Disclosure Statement to be accurate and reliable, and relied upon the same in purchasing the Property.

31.     Paragraph 11(a) of the Homeowner Disclosure Statement asked whether the Property contained or had ever contained any toxic substances, UFFI, asbestos, or lead paint. Syversons answered "No" to this query, despite the previously documented existence of asbestos in the house on the Property and despite the Syversons having previously had asbestos siding removed from the house. At the time they answered "No" on paragraph 11(a) of the Homeowner Disclosure Statement, Syversons therefore knew said answer was false.

32.     Paragraph 11(n) of the Homeowner Disclosure Statement asked whether the Property was located next to or in close proximity of a dump, junk yard, or toxic disposal site. Syversons answered "No" to this query, despite having had the aforementioned dump pit(s) dug to dispose of asbestos-contaminated construction remnants and siding removed from the home. Syversons thus knew their answer of "No" on paragraph 11(n) of the Homeowner Disclosure Statement was false at the time they completed said Homeowner Disclosure Statement.

33.     Paragraph 3(b) of the Homeowner Disclosure Statement asked whether the roof had ever leaked during Syversons' ownership of the Property. Syversons answered "No." However, pictures of the house from the time period in which it was being relocated show the roof was in extremely poor condition with many of the original shingles missing or needing replacement. Christiansens obtained these pictures in 2018 and did not know of their existence when purchasing the Property. Further, an engineering inspection of the house by TD&H Engineering on or about June 6, 2008 concluded that several places on the ceiling of the main floor appeared to show water damage. Further, issues with the venting of the roof led to significant icicle formation every winter.

34.     Paragraph 11(b) of the Homeowner Disclosure Statement asked whether the Property then contained or had ever contained any underground tanks and, if so, the location of such tanks. Syversons answered "No" to this query. However, at the time there was both a 2,000-gallon cistern and a septic tank underground on the Property, both of which Syversons had installed and therefore knew about at the time they falsely answered paragraph 11(b) of the Homeowner Disclosure Statement.

35.     Paragraph 11(f) of the Homeowner Disclosure Statement asked whether there were any existing or threatened legal actions affecting the Property. Syversons falsely answered "No" to this query, despite knowing of the ongoing easement dispute and imminent easement lawsuit by Bennett Industries, Inc.

36.     Paragraph 10(a) of the Homeowner Disclosure Statement asked whether there was any unusual amount of noise from any source (i.e., airplanes, traffic, schools, or business) that affected the Property. Syversons falsely answered "No" to this query despite knowing that the airstrip in their front yard was being actively used by neighbors.

37.     In large part due to the ongoing dispute and lawsuit with Bennett Industries, Inc. over the airstrip easement on the Property, Capital was unable to sell the Property until 2010, when Plaintiff Jack Christiansen purchased the Property.

38.     From the time that Syversons conveyed the Property to Capital until Capital conveyed the Property to Jack Christiansen, Capital reduced the list price of the property multiple times due to the easement dispute preventing the Property from being sold.

39.     Jack Christiansen bought the Property in 2010 for the purchase price of $225,000.00. At the time Jack Christiansen bought the Property, he had no knowledge of any hazardous materials on the Property, of the existence of the dump pit created by the Syversons for construction remnants and asbestos siding, or of various other issues with the Property to which the Syversons had answered "No" on their Homeowner Disclosure Statement. Jack Christiansen relied upon the Syversons' representations in the Homeowner Disclosure Statement in deciding to purchase the Property. Had the Syversons' Homeowner Disclosure Statement been a truthful representation of actual conditions of the house and Property, Jack Christiansen would not have purchased the Property given the presence of hazardous materials in the house, the dump pit dug on the property, and the other issues with the Property described herein.

40.     When Jack Christiansen bought the Property, he did so after having reviewed the Syversons' Homeowner Disclosure Statement. Jack Christiansen reviewed and placed his initials on the pages of the Homeowner Disclosure Statement on or about March 5, 2010. Having reviewed and initialed the Homeowner Disclosure Statement before closing on the Property, Jack Christiansen relied upon the Syversons' statements in the Homeowner Disclosure Statement in ultimately closing the purchase of the Property.

41.     Jack Christiansen has resided in the house on the Property since April 2010. Marie Christiansen has resided in said house since March 2012.

42.     In September 2017, the Christiansens began a series of necessary repairs to the house on the Property. These repairs began at the edge of the roofline, where damage had occurred

due to significant icicle formation on the eaves in the winter. The Christiansens suspected insufficient attic ventilation was causing "hot roof" conditions.

43.     Although the soffit panels had ventilation holes, when the Christiansens removed the panels they found there were no openings between the rafters to properly vent the attic.

44.     When the shingles at the edge of the roof were investigated for damage, the Christiansens found large gaps between the plywood sheathing and insufficient tar paper covering the roof. Without knowing about any of the vermiculite in the attic, the Christiansens drilled openings into the attic space from the outside to install attic ventilation covers.

45.     When the Christiansens entered the attic space for the first time after finishing this job on the east side of the house, they found they had drilled into a space filled with vermiculite. At that point Christiansens also found an improperly installed open bathroom vent duct connecting the attic to the bathroom.

46.     After discovering the vermiculite in the attic in September 2017, Christiansens took samples of the vermiculite for testing at Mountain Laboratories in Spokane Valley, Washington. The vermiculite samples tested positive for asbestos. True and correct copies of Mountain Laboratories' results are attached hereto as **Exhibit "E."**

47.     Since September 2017, Christiansens have had vermiculite samples tested for asbestos. Specifically, since September 2017 Christiansens have had four (4) vermiculite samples taken in the attic—all from different locations. The first three (3) samples were taken from three (3) different locations in the attic by Jack Christiansen in September 2017, per specific instructions from Mountain Laboratories in Spokane. All three (3) of said samples tested positive for asbestos.

48.     Syversons have claimed they had the vermiculite in the attic tested for asbestos during their ownership of the Property and that the vermiculite tested negative. To date, however, Syversons have failed to provide any testing results or even the name of the laboratory that purportedly conducted said testing.

49.     On or about November 2, 2017, Christiansens had a fourth sample of vermiculite taken from a different location in the attic by a building inspector from IRS Environmental. That sample also tested positive for the presence of asbestos.

50.     During their testing efforts, both Christiansens and the building inspector from IRS Environmental also submitted samples of insulation sheets discovered in the attic for testing. Both sampling efforts returned results indicating a very high presence of asbestos in the insulation

sheets. True and correct copies of these test results are attached hereto as **Exhibit "F."** To date, the Syversons have not responded to or explained these findings.

51.     After discovering the vermiculite in the attic in September 2017, Christiansens discussed the matter with their neighbor Gary Ogden (now deceased). At that point, Mr. Ogden told the Christiansens that, at Thane Syverson's request, he had dug a pit on the Property for the purpose of burying asbestos-contaminated construction remnants and asbestos siding that the Syversons removed from the house after moving the house to the Property. Before this point, the Christiansens had been unaware of any asbestos siding on the house or on the Property.

52.     After learning of the presence of asbestos siding materials and the Syversons' efforts to transport those materials to the dump pit(s) they had dug on the Property, the Christiansens located small broken pieces of the original siding around the yard and in the approximate location of the pit Gary Ogden had informed them about. True and correct photographs of said siding pieces are attached hereto as **Exhibit "G."** Samples of these siding remnants tested positive for the presence of asbestos at Mountain Laboratories in Spokane Valley, Washington. True and correct copies of these test results are attached hereto as **Exhibit "H."**

53.     On or about May 8, 2019, Christiansens excavated a portion one of said dump pit(s) on the Property and discovered numerous construction remnants. These construction remnants were located in the area of the Property where Gary Ogden had told the Christiansen's that the asbestos materials had been buried. These construction remnants discovered on or around May 8, 2019 included without limitation 1950s-era vintage floor tiling, mastic, blueboard foam insulation, siding chips, window trim, and pieces of trim boards. A true and correct photograph of said excavation is attached hereto as **Exhibit "I."** Before excavating said portion of the pit on or about May 8, 2019, Christiansens had been unaware of these construction remnants.

54.     Syversons were aware of the presence of asbestos-contaminated materials in and around the pit(s) they had dug on the Property, and had made unsuccessful attempts to burn such materials. Despite having such knowledge, however, in paragraph 11(n) of the Homeowner Disclosure Statement the Syversons falsely denied that the Property was located next to or in close proximity of a dump, junk yard, or toxic disposal site.

55.     Christiansens have never placed any materials in this pit(s) and did not know about the pit's existence until the fall of 2017.

56.     As a direct result of Syversons' intentional misrepresentations about the Property on the Homeowner Disclosure Statement, Christiansens have incurred damages in an amount exceeding $10,000.00—said damages including without limitation laboratory testing fees, hazardous material removal costs, medical testing costs, and devaluation of the Property directly resulting from the existing issues that were undisclosed on Syversons' Homeowner Disclosure Statement.

57.     Since shortly after discovering beginning in September 2017 the undisclosed issues with the Property described herein, the Christiansens have made significant efforts to inform the Syversons about said issues in an effort to resolve these matters. However, Defendants have refused to acknowledge any responsibility or to or offer any compensation for the damages caused by their misrepresentations described herein, thus requiring resolution through the Court system.

### III.     FIRST CAUSE OF ACTION: FRAUD

58.     Plaintiffs incorporate all prior paragraphs herein, inclusive.

59.     Defendants made representations of fact on the Homeowner Disclosure Statement about the Property—including without limitation that:  (a) the Property had never contained any toxic substances, UFFI, asbestos, or lead paint; (b) that the Property was not next to or in close proximity of a dump, junk yard, or toxic disposal site; (c) the roof had never leaked during their ownership of the Property; (d) the Property did not contain and never had contained any underground tanks; (e) there were no existing or threatened legal actions affecting the Property; and (f) there was not any unusual amount of noise from any source that affected the Property.

60.     The representations of fact identified in paragraph 59 above were all false at the time they were made by Defendants.

61.     The representations of fact identified in paragraph 59 above were material to Jack Christiansen's decision to purchase the Property. Had Jack Christiansen known said representations of fact were false, he would not have purchased the Property.

62.     At the time they made the representations of fact identified in paragraph 59 above, Syversons knew said representations of fact were false.

63.     The Homeowner Disclosure Statement completed and signed by Defendants stated in part that "even though this is not a warranty, prospective buyers may rely on this information in deciding whether or on what terms to purchase the property." Therefore, Defendants intended that

their representations in the Homeowner Disclosure Statement be acted upon by Plaintiffs as reasonably contemplated by the Homeowner Disclosure Statement.

64.     At the time Jack Christiansen purchased the Property, he did not know the falsity of any of Defendants' representations in the Homeowner Disclosure Statement. Further, Plaintiffs did not know the falsity of any of the representations in the Homeowner Disclosure Statement until September 2017.

65.     Jack Christiansen relied upon Defendants' representations in the Homeowner Disclosure Statement in deciding to purchase the Property in 2010 and ultimately closing said purchase.

66.     Jack Christiansen's reliance upon the Defendants' representations in the Homeowner Disclosure Statement was justifiable for reasons including (without limitation) that at the time he purchased the Property he was unaware of any facts contradicting what Defendants had represented about the Property in the Homeowner Disclosure Statement and because the Homeowner Disclosure Statement expressly stated prospective buyers could rely on the representations therein.

67.     As a direct and proximate result of Defendants' intentional misrepresentations about the Property complained of herein, Plaintiffs have suffered damages in an amount exceeding $10,000.00.

## IV.     SECOND CAUSE OF ACTION: ATTORNEY'S FEES AND COSTS

68.     Plaintiffs incorporate all prior paragraphs herein, inclusive.

69.     Because of Defendants' conduct complained of herein, Plaintiffs have had to acquire the services of an attorney and are entitled to an award from Defendants of their attorney's fees and costs in an amount to be determined by the Court if this matter is contested as provided by Idaho law, including without limitation Idaho Code sections 12-101, 12-120, and 12-121, as applicable.

70.     Should this matter result in default, Plaintiffs should be awarded Twenty Thousand Dollars and Zero Cents ($20,000.00) to represent a reasonable amount expended in attorney fees and costs to determine the nature of the issues arising from Defendants' activities and to gain such default related to Defendants' unlawful conduct as complained of herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief against Defendants as follows:

(1)     For judgment on Plaintiffs' First Cause of Action (Fraud), in an amount exceeding $10,000.00 to be proven at trial;

(2)     For judgment on Plaintiffs' Second Cause of Action (Attorney's Fees and Costs) awarding Plaintiffs' attorney's fees and costs as provided by Idaho law, including without limitation Idaho Code sections 12-101, 12-120, and 12-121, as applicable; and

(3)     For such other and further relief as the Court may deem just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of no less than twelve (12) jurors on all issues so triable.

Dated this 28th day of August, 2019.

MACOMBER LAW, PLLC

CLARK & FEENEY, LLP

*/s/ Gregory M. George*
By: Gregory M. George, ISB No. 9937
Attorney for Plaintiffs

*/s/ P. Thomas Clark*
By: P. Thomas Clark, ISB No. 1329
Attorney for Plaintiffs

Pursuant to Idaho Code section 9-1406, I declare under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 28th day of August, 2019.

*/s/ Jack Christiansen*
Jack Christiansen

*/s/ Marie Christiansen*
Marie Christiansen

# EXHIBIT "A"





# EXHIBIT "B"



# EXHIBIT "C"

RP38N01W350602A 5386   19-00
STELLYES SANDRA L
1054 MASON BUTTE RD
KENDRICK        ID 83537

**IDAHO RESIDENTIAL PROPERTY RECORD**   Sheet No ___ of ___

*RP38N01W350602A        19-30
SEC 35 38N 1W
N 1/2 SW4NE4

Property Address  Cuddy Rd

| | MISCELLANEOUS DATA | | VALUES SUMMARY | |
|---|---|---|---|---|
| | | | YEAR | YEAR |
| Class | | | | |
| Use Code | 3417 | Residence | $ | $ |
| Units | 1 | Garage | $ | $ |
| Market Grade | 2 | Carport | $ | $ |
| Year Built | 1945 | | | |
| Year Remodeled | | Other | $ | $ |
| Effective Age | 61 | | | |
| Effective Year | 1940 | Total Improve | $ | $ |
| Shape Code | A | | | |
| Date Occupied | | Land | $ | $ |
| | | Manf Home @ $ | $ | $ |

| | Date | Rev Yr | |
|---|---|---|---|
| Inspected By | LS | 5-19-00 |
| Compared By | LS | 1-10-01 |
| Certified Appraiser | | |
| Assessor | | |
| Reinspection | | |

Prelim'l
Building Permit   YES / NO
Under Construct

**PURCHASE INFORMATION**

| | | Date |
|---|---|---|
| Price | | Date |
| Price | | Date |
| Asking | | Date |
| Rent | For | Date |

Photo No  RB 4533



moved to
Melvin Walker's
prop.
2/11/05
SSB/It

Reappraisal
TRWS
07/27/04

House - Fort
moved to Freeman
Cr Rd

**LAND INFORMATION**

| 01 | NEIGHBORHOOD | | | 02 | OFF-SITE IMPROVEMENTS | | | 03 | TOPOGRAPHY | 04 | WATER FRONT PROPERTY | | | 05 | ON-SITE UTILITIES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | Urban | 06 | Stable | | Street | 04 | Asphalt/Conc | 01 | Low | 01 | Lake | 6 | Beach | 01 | Electricity | 05 | Public Water |
| 02 | Suburban | 07 | Improving | 01 | None | 05 | Gravel/Dirt | 02 | Level | 02 | River/Creek | None | P F A G E | 02 | Gas | 06 | Private Well |
| 03 | Rural | 08 | Declining | 02 | Public Access | 06 | Sidewalks | 03 | Moderate Slope | 03 | Accesion | 7 | Grade | 03 | Underground Elec/Telephone | 07 | Public Sewer |
| 04 | Recreational | | | 03 | Private Access | 07 | Curb/Gutters | 04 | Steep Slope | 04 | Bluff Land | P F A G E | | 04 | Cable TV | 08 | Septic System |
| 90 | | | | 90 | | | | 90 | | 05 | Flood Plain | 50 | | 90 | | | |

| 06 | SUBJECT DIMENSIONS | 07 | | SITE INFORMATION | | 08 | REMARKS |
|---|---|---|---|---|---|---|---|
| Frontage | | 01 | Location | P F A G E | | | |
| Depth | | 02 | Amenities | P F A G E | | | |
| Other 5.00 AC | | 03 | Landscaping | P F A G E | | | |
| | | 04 | View | P F G E | | | |
| | | 05 | Comments | Few  Many  None | | | |
| | | 06 | Zoned | | | | |

| 09 | COMPOSITE ADJUSTMENT | | | | | | | 10 | | | | SITE ADJUSTMENTS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CAT | LOC | CLASS | TYPE | UNIT | QTY | COST | BASE VALUE | 01 | Location | 10 | Access | 20 | View | 30 | Topography | 40 | Width | TOTAL | EXT. VALUE |
| | | | | | | | | 50 | Depth | 60 | Frontage | 70 | Beach | 80 | Corner | 90 | | | |

APPRAISER: LS  APPRAISAL DATE: 5-19-00  REVIEW YR 2001
REINSPECTED APPR. _____ DATE _____ REVIEW YR _____

IAD-RC
1V. 5 90

**LAND VALUE** $

## ROOM GRID

| | LIVING ROOM | KITCHEN | DINING ROOM | FAMILY REC. | BEDROOMS | BATH ROOMS | UTILITY | OTHER ROOMS | FIREPLC. |
|---|---|---|---|---|---|---|---|---|---|
| **LOCATION** | | | | | | | | | |
| FIRST FLOOR | 1 | 1 | | | 2 | 1.00 | | | |
| SECOND FLOOR | | | | | | | | | |
| BASEMENT | | | | | | | | | |
| ATTIC | | | | | | | | | |

**RESIDENCE**

| | | STORIES | | INTERIOR INSPECTED |
|---|---|---|---|---|
| CLASS | 2 | 1 (1½) 2 | YES (NO) REFUSED | |
| CONFORMING | ✓ | | 1 OWNER | |
| NON CONFORMING | | | 2 TENANT | |
| OTHER VALUE | | | 3 ___ ATTIC | |

**REMARKS**

House bought he before time ...
... window siding new ...
off shingles on ...
... rated state ...
... chimney ...
... level

**LOCATION**

| | CLASS | AREA | RATE | ADJUSTMENT FACTORS | | | ADJUST. RATE | BASE COST |
|---|---|---|---|---|---|---|---|---|
| | | | | SIZE | SHAPE | QUAL | TOTAL | |
| FIRST FLOOR | 2 | 1288 | | | 1.00 | | | |
| SECOND FLOOR | | | | | | | | |
| BASEMENT TOTAL AREA UNF | | 1288 | | | | | | |
| SEALED AREA | | | | | | | | |
| FINISHED AREA | | | | | | | | |
| ATTIC TOTAL AREA | 2 | 435 | | | 1.00 | | | |
| SEALED AREA | 2 | 435 | | | 1.00 | | | |
| FINISHED AREA | | | | | | | | |

**FOUNDATION** 10 | 01 CONC | 02 MSRY | 03 PIER | 04 ROCK | 05 WOOD | 80 | | 1000

**EXTERIOR WALLS**

| 20 | (01) DOUBLE 02 SINGLE | 21 | 01 ALUM ___% 02 SIDING 100% 03 BLOCK ___% 04 BRICK ___% | 05 BRK VEN ___% 06 B & B ___% 07 HD. BD ___% 08 LOG ___% | 09 PLYWD ___% 10 SHINGLE ___% 11 STEEL ___% 12 STONE ___% | 13 STUCCO ___% 14 T1-11 ___% 15 WOOD ___% 90 ___% | 2000 |
|---|---|---|---|---|---|---|---|

**WINDOWS** 30 | 01 WOOD | 02 METAL | 03 MIXED | 31 GLAZING: (01) 02 03 04 MIXED | 90

**ROOF** 40 | 01 A-FRAME | 02 COMPLEX | 03 FLAT | (04) GABLE | 05 GAMB | 06 HIP | 07 MANS | 08 SHED | 90 | 4000

**SHINGLES:** 41 | (01) COMP | 02 COMP/HVY | 03 CEDAR | 90 **SHAKES:** 04 MED | 05 HEAVY **TILE:** 06 CLAY | 07 CONCRETE **06 BUILT-UP | 09 GRAVEL | 10 COMP-ROLL | 11 CGI | 12 ALUM SHEET | 13 ENAMEL STEEL**

**INTERIOR** 50 | GROUND FLOOR CONSTRUCTION 01 WOOD 1288 SF | 02 CONCRETE SLAB ___ SF | 90 | 5000

| 51 | WALL FINISH: | (01) DRYWALL | 02 PLASTER | 03 PANEL | 04 LOG | (05) COMPOSITION | 90 | | 5100 |
|---|---|---|---|---|---|---|---|---|
| 52 | CEILING: | (01) STANDARD | 02 BEAMS | 03 CATHEDRAL | 04 REC. LIGHTING | 05 ___ | CIRC. FANS @ $ ___ | 90 | |
| 53 | CABINETRY: | (01) SOFT WD | 02 HARD WD | 03 METAL | 90 ___ | | | | 5300 |
| 54 | ELECTRICAL: | 01 220V | 02 110V | 03 NONE | 04 INTERCOM | 05 VAC SYSTEM | 90 ___ | | 5400 |

**BUILT-IN APPLIANCES**

| 60 | 01 RANGE $ ___ (02) HOOD & FAN $ ___ 03 DISHWASHER $ ___ 04 GARBAGE DISP $ ___ | 05 COOKTOP $ ___ 06 SINGLE OVEN $ ___ (07) DOUBLE OVEN $ ___ 08 DBL OVEN w/Mic W/ $ ___ | 09 MICROWAVE OVEN @ $ ___ 10 SELF EXH. RANGE/ GRILL $ ___ 11 SELF CLEANING FEATURE $ ___ 12 TRASH COMPACTOR $ ___ 13 EXH FANS $ ___ 91 ___ $ ___ |
|---|---|---|---|

**PLUMBING**

| 70 | (02) LAVATORIES $ ___ (02) TOILETS $ ___ (02) KITCHEN SINK $ ___ 04 WTR HTR (elec) $ ___ | **BATH TUBS:** (05) TWO SHOWER $ ___ 06 SHOW-PLAST. $ ___ 07 SHOWER-TILE $ ___ 08 DOOR $ ___ | **SHOWER STALLS:** 09 METAL $ ___ 10 FIBERGLAS $ ___ 11 TILE $ ___ 12 DOOR $ ___ | 13 ROUGH-IN $ ___ 14 LAUNDRY TUB $ ___ 15 WTR HTR (gas) $ ___ 16 BAR SINK $ ___ 17 BIDET $ ___ | 18 JET TUB $ ___ 19 GARDEN TUB $ ___ 20 HOT TUB $ ___ 90 ___ $ ___ 91 ___ $ ___ | 7000 |
|---|---|---|---|---|---|---|

**HEATING & COOLING**

| | HEATING SYSTEM | APPLIC AREA | RATE | HEATING SYSTEM | APPLIC AREA | RATE | |
|---|---|---|---|---|---|---|---|
| FUEL: 01 GAS ___% 02 OIL ___% (03) ELECT 50 % 81 (04) SOUND 50 % 90 ___% | 01 F.A. HEATING 02 F.A. HEAT & COOL 03 HEAT PUMP 04 ELECT. BBRD 05 ELECT. CABLE | | 1505 | 06 HOT WATER BBRD 07 SOLAR 08 STOVE/FIREPLC 90 ___ 91 ___ | | 1505 1X | 8100 |

**HEATING ACCESSORIES**

| 82 | 01 SINGLE FIREPLACE CL___ 02 DOUBLE FIREPLACE CL___ 03 STACKED FIREPLACE CL___ | 04 HEATING STOVE 05 HEARTH & FLUE 06 METAL LINER & CIRCULATOR 07 PRE-FAB METAL BOX | **CHIMNEY:** 04 1 - STORY OUTSIDE BRICK 05 2 - STORY OUTSIDE BRICK (06) Hearth & Flue ___ 01 ___ | 9000 |
|---|---|---|---|---|

**SPECIALS/REMARKS**

| 90 | | 80 ___ 91 ___ 92 ___ 93 ___ 94 ___ | 9000 |
|---|---|---|---|

| | | TOTAL BASE COST AND ADJUSTMENTS | 1 | $ |
|---|---|---|---|---|
| **MARKET GRADE** 2 | | L.C.M. 18 ___ X LINE 1 = | 2 | |
| PHYSICAL 1 2 3 4 5 | | QUALITY ADJUSTMENT ___ X LINE 2 = R.C.N | 3 | |
| FUNCTIONAL 1 2 3 4 5 | | MARKET ADJUSTMENT .59 X LINE 3 = | 4 | |
| ECONOMIC 1 2 3 4 5 | | % COMPLETE ___ X LINE 4 = | | |
| P F A G E | | **MARKET VALUE** ➡ | $ | |

| GARAGE: CARPORT: | | FOUNDA-TIONS | FLOOR | ROOF | EXTERIOR WALL COVERING | % | MISC. | DIMEN-SIONS | AREA | RATE | BASE COST | REMARKS | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Unfinished | Built In ___1 | | | | | | | X | | | $ | | | | | | | |
| 2 Min. Finish | Flat Roof ___2 | | | | | | | | | | $ | | | | | | | |
| 3 Finished | Hip/Gable ___3 | | | | | | | | | | $ | | | | | | | |
| less ___ | Class ___ | $ | $ | $ | $ | | $ | | | | | | | | | | | |
| ear Built ___ | Year Built ___ | STORAGE | | | | | | | | | $ | | | | | | | |
| 1   2   3 | 1   2   3 | NO. DOOR OPENERS ___ STORAGE CABINET ___ | | | | | | | | | $ | | | | | | | |
| TT  DET BSMT | ATT  DET BSMT | EXTERIOR WALL: ☐ Curtain ☐ Screen | | | | | | | | $ | $ | L.C.M. | QUALITY FACTOR | REPLACEMENT COST - NEW | MARKET ADJ. | % COMPLETE | MARKET VALUE |
| | | | | | TOTAL | | | | | $ | | | $ | | $ | | | |

| GARAGE: CARPORT: | | FOUNDA-TIONS | FLOOR | ROOF | EXTERIOR WALL COVERING | % | MISC. | DIMEN-SIONS | AREA | RATE | BASE COST | REMARKS | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Unfinished | Built In ___1 | | | | | | | X | | | $ | | | | | | | |
| 2 Min. Finish | Flat Roof ___2 | | | | | | | | | | $ | | | | | | | |
| 3 Finished | Hip/Gable ___3 | | | | | | | | | | $ | | | | | | | |
| less ___ | Class ___ | $ | $ | $ | $ | | $ | | | | | | | | | | | |
| ear Built ___ | Year Built ___ | STORAGE | | | | | | | | | $ | | | | | | | |
| 1   2   3 | 1   2   3 | NO. DOOR OPENERS ___ STORAGE CABINET ___ | | | | | | | | | $ | | | | | | | |
| TT  DET BSMT | ATT  DET BSMT | EXTERIOR WALL: ☐ Curtain ☐ Screen | | | | | | | | $ | $ | L.C.M. | QUALITY FACTOR | REPLACEMENT COST - NEW | MARKET ADJ. | % COMPLETE | MARKET VALUE |
| | | | | | TOTAL | | | | | $ | | | $ | | $ | | | |

### OTHER IMPROVEMENTS

| USE CODE/DESCRIPTION | FOUN-DATION | FLOOR | ROOF | WALLS | MISC. | DIMENSIONS | AREA | RATE | BASE COST | L.C.M. | QUALITY FACTOR | REPLACEMENT COST - NEW | MARKET ADJ. | % COMPLETE | MARKET VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1  322 1/ | Pier | wood | AL | AL | | 14x24 | 336 | 4.56 | 1532 | | | X | | .30 | 459 |
| CLASS  4  BL | RD  ELF | | | | one metal setting outside porch roof brides over prob. broken. | | | | | | | | | | |
| YR. BLT  1956 | | | | | | (portion) | | | | | | | | | | |
| 2  322 | (one) | Gravel | ES | ES | | 32x48 | 1536 | 5.54 | 2309 | | | 11532 | | .95 | 10,955 |
| GP  BLDG  4 | LIF | | | | Precula Picture Lasing | 32x24 | 768 | 3.15 x 1.25 | 3023 | | | | | | |
| CLASS  7 | | | | | Posts Frames | | | | | | | | | | |
| YR. BLT  1995 | BFL | (one side open) | | | manufactured trusses, weathered storage | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| CLASS | | | | | | | | | | | | | | | |
| YR. BLT | | Other shed present but in VP condition! Falling apart | | | | | | | | | | | | | |
| 4 | | | in two different directions. | | | | | | | | | | | | |
| CLASS | | | | | | | | | | | | | | | |
| YR. BLT | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | |
| CLASS | | | | | | | | | | | | | | | |
| YR. BLT | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| CLASS | | | | | | | | | | | | | | | |
| YR. BLT | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| CLASS | | | | | | | | | | | | | | | |
| YR. BLT | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| CLASS | | | | | | | | | | | | | | | |
| YR. BLT | | | | | | | | | | | | | | | |
| REMARKS | | | | | OTHER IMPROVEMENTS TOTAL | | | | | | | | | 2991 | 11,414 |

#### ADDITIONAL CODES FOR OTHER IMPROVEMENTS

| ROOF | WALLS | FLOOR |
|---|---|---|
| 14  Plywood | 16  Baked Enamel | 03  Dirt |
| | 17  Galvanized | 04  Gravel |
| | | 05  Asphalt |

# EXHIBIT "D"

04/03/2008 10:37 FAX 5415638449          USFS WALDPORT                              ☒004

## CAPITAL
RELOCATION SERVICES

**HOMEOWNER DISCLOSURE STATEMENT**
Page 1 of 2

Seller is a relocation company and
has never occupied the property
and makes no representations
to condition of property.

Current Date: 4/8/08          Date Purchased: 04

Homeowner(s) Name(s): Thane and Rebkah Syverson
                                    Rebekah
RE: Property Address: 4277A Freeman Creek Road, Lenore, ID 83541

In connection with my/our relocation, I/we make the following disclosures to the best of my/our knowledge regarding my/our property with the knowledge that even though this is not a warranty, prospective buyers may rely on this information in deciding whether or on what terms to purchase the property. I/we further understand that an offer to purchase will not be made until this disclosure is completed.

**1. HOUSE SYSTEMS**
Are there any problems affecting:

| | | Yes | No | | | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| (a) | Electrical Wiring | ☐ | ☑ | (f) | Appliances? | | ☐ | ☑ |
| (b) | Air conditioning/cooling system | ☐ | ☑ | (g) | Floors? | | ☐ | ☑ |
| (c) | Plumbing? | ☐ | ☑ | (h) | Water system (well?) | | ☐ | ☑ |
| (d) | Heating? | ☐ | ☑ | (i) | Sprinkler system? | | ☐ | ☑ |
| (e) | Pool/Hot tubs/Spa? | ☐ | ☑ | (j) | Chimneys/Fireplace | | ☐ | ☑ |

**2. LAND/FOUNDATION**
(a) Is the property located on filled or expansive soil?                                    ☐ ☑

(b) Have any sliding, settling, earth movement, upheaval or earth stability problems occurred on
your property or in the immediate neighborhood?                                            ☐ ☑
(c) Are there any defects or problems relating to the foundation/basement?                  ☐ ☑
(d) Has a water or dampness condition ever existed in your basement/crawlspace?             ☐ ☑

**3. ROOF**
(a) Age                                                                                     2 Years
(b) Has the roof ever leaked during your ownership?                                         ☐ ☑
(c) Has the roof been replaced or repaired during your ownership?                           ☑ ☐
(d) Are there any problems with the roof?                                                   ☐ ☑

**4. EXTERIOR SIDING**
(a) Is any surface of the residence exterior clad with Synthetic Stucco, EIFS
(Exterior Insulation Finish System), or Dryvit?                                             ☐ ☑
(b) Is Louisiana Pacific Siding (LP Siding) present on the exterior of your residence?      ☐ ☑

**5. SEWAGE**
(a) Is the property connected to a public sewer system?                                     ☐ ☑
(b) Is there a septic tank/cesspool system serving this property? (If yes, when was it last serviced?) 2005  ☑ ☐
(c) Do you know of any problems relating to the septic tank/cesspool/sewer system?          ☐ ☑

**6. DRAINAGE/WATER**
(a) Is this property located in a flood plain zone?                                         ☐ ☑
(b) Has the property ever had a drainage or flooding problem?                               ☐ ☑
(c) Have any properties in the immediate neighborhood ever had a drainage or flooding problem?  ☐ ☑

**7. BOUNDARIES**
(a) Have you ever had a survey of your property done?                                       ☐ ☑
(b) Are the boundaries of your property marked in any way? (if yes, please describe using additional
sheets if necessary) the corners are marked with rebar and cap.                             ☑ ☐

**8. ADDITIONS/REMODELS**
(a) Are you aware of any structural additions, changes, or repairs made to the property by former
owners without obtaining all necessary permits and government approvals?                    ☐ ☑
(b) Have you made any structural additions, changes, or repair to the property?             ☑ ☐
(c) Have you obtained all necessary permits and government approvals?                        ☑ ☐

**9. HOMEOWNERS ASSOCIATION**
(a) Is the property subject to rules and regulations of any homeowner's association?        ☐ ☑
(b) Are there any problems relating to any common area?                                     ☐ ☑
(c) Are there any conditions which may result in an increase in taxes or assessments?       ☐ ☑
(d) Are there any pending or threatened claims or lawsuits against the Homeowners Association?  ☐ ☑

3/5/10

## CAPITAL
RELOCATION SERVICES

### HOMEOWNER DISCLOSURE STATEMENT
### Page 2 of 2

**10. NEIGHBORHOOD**

|  |  | Yes | No |
|---|---|---|---|
| (a) | Any unusual amount of noise from any source (i.e. airplanes, traffic, schools, or business) that affects the property? | ☐ | ☒ |
| (b) | Are there any other neighborhood conditions or problems affecting the property? (Please explain) | ☐ | ☒ |

**11. MISCELLANEOUS**

|  |  | Yes | No |
|---|---|---|---|
| (a) | Does the property now contain or has it ever contained any toxic substances, UFFI, asbestos or lead paint? If yes, where? | ☐ | ☒ |
| (b) | Does the property now contain or has it ever contained any underground tanks? If so, where? | ☐ | ☒ |
| (c) | Are there any violations of local, state or federal government laws or regulations relating to this property? | ☐ | ☒ |
| (d) | Have any termite/pest control reports on the property been prepared in the last 5 years? | ☐ | ☒ |
| (e) | Are there any encroachments, overlaps, boundary line disputes, or unrecorded easements relating to this property? | ☐ | ☒ |
| (f) | Are there any existing or threatened legal actions affecting this property? | ☐ | ☒ |
| (g) | Are there any past or present problems with driveways, walkways, patios, seawalls, fences, retaining walls, party walls on the property or adjacent properties? | ☐ | ☒ |
| (h) | Is the property located on an earthquake fault? | ☐ | ☒ |
| (i) | Are there any bonds or assessments affecting this property? | ☐ | ☒ |
| (j) | Does the house have central air conditioning? | ☐ | ☒ |
| (k) | Is the residence equipped with an operable smoke detector? | ☒ | ☐ |
| (l) | Is there a security system on the premises? (If yes, answer the following 3 questions) | ☐ | ☒ |
|  | 1.   Is the system owned☐   leased☐? |  |  |
|  | 2.   Is monitoring being provided contractually? (If no, skip the third question) | ☐ | ☐ |
|  | 3.   Are there special provisions in the contract for cancelling or transferring services? | ☐ | ☐ |
| (m) | Have there been any significant repairs made to the property or to any of its systems or components within the last five years? (If yes, please describe using additional sheets if necessary) | ☒ | ☐  *See additional sheet.* |
| (n) | Is the property located next to or in close proximity of a dump, junk yard or toxic disposal site? | ☐ | ☒ |
| (o) | Has the property been tested for radon gas? | ☐ | ☒ |
| (p) | Are all parties that have an interest in the subject property (vested, marital or homestead) U.S. Citizens? (If no, provide names: _____) | ☒ | ☐ |

**12. REPORTS**

Please attach copies of all existing reports and documents now in your possession relating to this property including:   *Not currently available*

| | | | |
|---|---|---|---|
| (a) | Surveys | (i) | Homeowner's Associations Documents |
| (b) | Structural Inspection Report | | 1.   Conditions, Covenants & Restrictions (CC&R's) |
| (c) | Building Permits | | 2.   Articles |
| (d) | Septic | | 3.   Bylaws |
| (e) | Soil Report | | 4.   Financial Statements of Homeowner's Association |
| (f) | Termite/Pest Control | | 5.   Statement re: Assessments |
| (g) | Engineering Reports | (k) | Pest control warranties or maintenance contracts |
| (h) | Radon Inspection Report | | |
| (i) | Disclosure Statements | (l) | Other: |

**13. GENERAL CONDITION**

(a) Do you know of any other facts, conditions, circumstances which may affect the value, beneficial use or desirability of this property? (If yes, please describe using additional sheets if necessary)    ☒ ☐
*See additional sheet.*

The above information is true and correct to the best of my/our knowledge and, except as set forth above, no material problems exist with respect to the property as of the date set forth above.

I/we hereby authorize the furnishing of the foregoing information to any prospective purchaser. We authorize Capital Relocation Services to obtain from or disclose to my employer any information concerning me/us in connection with the purchase and resale of this property or other relocation services furnished by Capital Relocation services on behalf of my employer.

Sellers: _____   4/3/08
(Date)

_____   4/3/08
(Date)

Buyers: _____   _____
(Date)                              (Date)

_____   3/5/10

Home Disclosure Statement, Thane & Rebekah Syverson, 4277A Freeman Cr. Rd., Lenore ID 83541

11. (m) Additional Information. This home was moved in 2004. A new foundation (daylight basement with French drains) was constructed. The house was set on the basement and completely renovated:

- The house was moved and the foundation (basement) was constructed by a licensed contractor.
- All wiring was replaced by a licensed electrician.
- All plumbing was replaced/installed by a licensed plumber.
- The roof was replaced, everything above the rafters.
- The outside walls are all insulated. The house was also wrapped in ¾" foil backed insulation board and Tyvek wrap.
- The house was completely resided with hardiplank.
- All exterior door and windows were replaced. The new windows are all vinyl, low-e, argon filled. The new exterior doors are all steel clad.
- New drywall was hung and finished in all of the rooms except the bedrooms.
- The flooring was all replaced.
- The fixtures were all replaced.
- The appliances and utilities are new as of 2004 except the oven and vent hood in the kitchen, but they both work fine.
- There are three heating systems: propane forced air furnace, wood forced air furnace, and electric baseboards in the bedrooms. Both of the forced air systems are plumbed into the duct work and will heat the whole house nicely.
- There is a second chimney for a wood stove on the main floor. It is new as of 2004 as well. All chimneys are protected by insulated chimney chases.
- The water heater is a 50 gallon propane unit.
- The 2nd floor bathroom, covered porch with entry mud room, rear deck, and daylight basement were all added on.

13. (n) Additional Information.

The property is less than five miles from Freeman Creek Campground and Boat Launch on the Dworshak Reservoir.

Freeman Creek runs through the Northern end of the property. The property is wooded on about 5 acres, and contains cedars and western larch in significant composition. The other 15 acres of the property were previously hay field. Of this, about 3 acres are fenced for horse pasture, and 10 acres are still cut annually for hay.

A private airstrip runs through the South end of the property. This property has 1/5 ownership on the airstrip, and there are four other owners. The airstrip is private in that only those parties that have partial ownership in it are allowed to use it, unless there is unanimous consent from all owners to do otherwise. There is an easement.

The walkout daylight basement is framed and plumbed for a third full bath, a second laundry room, and could easily be tied in to for second kitchen or bar.

The septic drain field was sized by the State for a 4 bedroom home. We installed twice what was required for 4 bedroom home, so it should have plenty of extra capacity.

The well is 180 feet deep. It produces 6 gpm. The formation is 50 ft of clay, 130 feet of decomposed granite & basalt, clay. The driller struck 5 gpm at 130 ft depth, so there is 50 feet of storage. The water is excellent, not hard, no detectable iron or sulphur. We installed a reservoir system, so that we would have capacity down the road for an underground sprinkler system for our yard. There is a pump in the well. There is a second pump and a float system in the 2000 gallon reservoir. There is also a pressure tank in the basement.

3/5/10

# EXHIBIT "E"



9922 East Montgomery Suite 13
Spokane Valley, WA 99206
(509) 922-1365 ● Fax (509) 922-1380



NVLAP LAB CODE 101890-0

September 26, 2017

**Jack Christiansen**                                    **Project Name: Asbestos Test**
**P.O. Box 116**
**Ahsahka, ID  83520**

Dear Mr. Christiansen,

The enclosed report details results for the analysis of the bulk sample(s) submitted to Mountain Laboratories on September 26, 2017.  Sample analysis was performed to determine asbestos type and content using Polarized Light Microscopy, supplemented by Dispersion Staining (PLM/DS).

This report includes a summary of the analytical results and chain of custody.  Analytical results are only reflective of the samples, which were tested and presented in this report.  Mountain Laboratories limits warranty to proper analysis methods and takes no responsibility for sample procurement.

It has been our pleasure providing you with these analytical services.  If you have any questions regarding this report, please do not hesitate to call us at (509) 922-1365.

Sincerely,

Heidi L. McCarthy
Laboratory Manager
Mountain Laboratories
Mountain Laboratories NW, Inc.

Enclosure: 2801.39060.39065H

Polarized Light Microscopy, NVLAP Accreditation

## MOUNTAIN LABORATORIES
## BULK SAMPLE ANALYSIS FOR ASBESTOS

**Jack Christiansen**
P.O. Box 116
Ahsahka, ID 83520

**Project Name: Asbestos Test**

Test Method: EPA-600/R-93/116: Interim Method for the Determination of Asbestos in Bulk Building Materials.      Customer #: 2801

| Laboratory No. | B17-39060 | B17-39061 | B17-39062 |
|---|---|---|---|
| Sample ID No. | 1 | 2 | 3 |
| Sample Description | Vermiculite Insulation | Vermiculite Insulation | Vermiculite Insulation |
| Sample Treatment | Teased | Teased | Teased |
| Homogeneous | Yes | Yes | Yes |
| Layered | No | No | No |
| Fibrous | Yes | Yes | Yes |
| Sample Color | Gold | Gold | Gold |
| Asbestos Present | Yes | Yes | Yes |
| Asbestos Type and Percentage<br>1. Chrysotile<br>2. Amosite<br>3. Crocidolite<br>4. Other | Actinolite <1% | Actinolite <1% | Actinolite <1% |
| Total % Asbestos | <1% | <1% | <1% |
| Other Fibrous Material In Sample | Wood <1%<br>Cellulose <1% | Wood <1%<br>Cellulose <1% | Wood <1%<br>Cellulose <1%<br>Mineral Wool 3% |
| Non-Fibrous Material: | Aggregate <1%<br>Vermiculite 96% | Vermiculite 97% | Aggregate <1%<br>Vermiculite 94% |

Date Analyzed: September 26, 2017                                                      Analyzed By: Heidi L. McCarthy

Mountain Laboratories, Mountain Laboratories NW, Inc. limits warranty to proper analysis methods only and takes no responsibility for sample procurement. Mountain Laboratories, Mountain Laboratories NW, Inc., 9922 E. Montgomery Suite 813, Spokane Washington 99206 (509) 922-1365 - Fax (509) 922-1380. PLM has been known to miss asbestos in a small percentage of samples. Thus negative or <1% PLM results should be tested with either SEM or TEM. Customer is responsible for sample separation. This report may only be reproduced in full with written approval by Mountain Laboratories. Soil/Dust samples are not covered under NVLAP Accreditation.

Sample results must not be used by the customer to claim product certification, approval, or endorsement by NVLAP, NIST, or any agency of the Federal Government.

## MOUNTAIN LABORATORIES
## BULK SAMPLE ANALYSIS FOR ASBESTOS

Jack Christiansen
P.O. Box 116
Ahsahka, ID  83520

Project Name: Asbestos Test

Test Method: EPA-600/R-93/116: Interim Method for the Determination of Asbestos in Bulk Building Materials.     Customer #: 2801

| Laboratory No. | B17-39063 | B17-39064 | B17-39065 |
|---|---|---|---|
| Sample ID No. | 4 | 5 | 6 |
| Sample Description | Ceiling/Siding Tile | Ceiling Tile | Ceiling Tile |
| Sample Treatment | Teased | Teased/Heated | Teased/Heated |
| Homogeneous | Yes | No | No |
| Layered | No | Yes | Yes |
| Fibrous | Yes | Yes | Yes |
| Sample Color | Off White | Tan/Off White | Tan/Off White |
| Asbestos Present | Yes | No | No |
| Asbestos Type and Percentage<br>1. Chrysotile<br>2. Amosite<br>3. Crocidolite<br>4. Other | Chrysotile 65-70% | N.D. | N.D. |
| Total % Asbestos | 65-70% | None | None |
| Other Fibrous Material In Sample | | Wood 99% | Wood 99% |
| Non-Fibrous Material: | Binder/Filler 30-35% | Paint <1%<br>Other 100% | Paint <1%<br>Other 100% |

Date Analyzed: September 26, 2017                                        Analyzed By: Heidi L. McCarthy

Mountain Laboratories, Mountain Laboratories NW, Inc. limits warranty to proper analysis methods only and takes no responsibility for sample procurement. Mountain Laboratories, Mountain Laboratories NW, Inc., 9922 E. Montgomery Suite #13, Spokane Washington 99206 (509) 922-1365 - Fax (509) 922-1380.  PLM has been known to miss asbestos in a small percentage of samples.  Thus negative or <1% PLM results should be tested with either SEM or TEM.  Customer is responsible for sample separation. This report may only be reproduced in full with written approval by Mountain Laboratories.  Soil/Dust samples are not covered under NVLAP Accreditation.

Sample results must not be used by the customer to claim product certification, approval, or endorsement by NVLAP, NIST, or any agency of the Federal Government.

CHAIN OF CUSTODY RECORD

Cell (208) 210 9407

## Mountain Laboratories

9922 E. Montgomery Drive, Suite 13
Spokane Valley, WA 99206
Phone: 509-922-1365
Fax: 509-922-1380
Email: heidi@mountainlaboratories.com

Project Name: Asbestos Test

Project No:

Results: (check box)

| Billing Information (if different) | |
| --- | --- |
| Contact Name, Address & Phone | |
| Atk Christiansen | |
| Po Box 116 | |
| AH Scnkd (Dw 8352 | |

| FAX: | |
| --- | --- |
| PHONE: 208 476 4797 | |
| X E-MAIL: milk.sen11.schund.com | |
| MAIL | |

**Customer Information**

TURNAROUND
☐ 1 HR   ☐ 48 HR
☒ 2 HR   ☐ 3 Day
☐ 24 HR  ☐ 5 Day

| SAMPLE # | SAMPLE DESCRIPTION/ID | DATE/TIME | # OF CONTAINERS | PLM - BULK | LEAD -AIR, PAINT, WIPE | REMARKS |
| --- | --- | --- | --- | --- | --- | --- |
| | See attached paperwork | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| RELEASED BY (Signature) | DELIVERY METHOD | RECEIVED BY (Signature) | COMPANY | DATE / TIME RECEIVED | CONDITION |
| --- | --- | --- | --- | --- | --- |
| | hand | L2 Templeton | Mountain Laboratories | 1:50pm 9/26/17 | Good |

25-Sep-17

Sample

| # | | | |
|---|---|---|---|
| 1 | freezer box 1 | Vermiculite? Insulation | west side attic; north of bathroom fan |
| 2 | freezer box 2 | Vermiculite? Insulation | west side attic; north of bathroom fan |
| 3 | freezer box 3 | Vermiculite? Insulation | east side attic; above freezer |
| 4 | construction remnant | ceiling/siding tile | west side of attic, laying on top of vermiculite |
| 5 | construction remnant | ceiling tile? | attic; laying on top of original roof (under new) |
| 6 | ceiling tile | celotex ceiling tile | from office |

Page 5 of 6

# EXHIBIT "F"



## WASHINGTON-OREGON-IDAHO-MONTANA
P.O. BOX 15216 * SPOKANE VALLEY, WA 99216-5216
**(509) 927-7867 FAX (509) 928-3933**

### ASBESTOS*LEAD
### ABATEMENT
### SELECTIVE DEMOLITION

CONT. REG. NO. IRSENWI033PN

November 9, 2017

Jack & Marie Christiansen
323 Barley Dr.
Lenore, ID 83541

VIA E-Mail:     mlarsen11@hotmail.com

RE:     Limited inspection at the Christiansen residence located at 323 Barley Dr. Lenore, ID

Dear Jack & Marie,

IRS Environmental of WA, Inc. has completed a *limited* asbestos inspection prior to renovation. The limited inspection for asbestos containing materials was completed November 2, 2017 at your request. The on-site visit was conducted by Wendy Nixon, a certified AHERA Building Inspector under 40 CFR, Part 763, Subpart E, Appendix C (Certification No. BIR-16-031, Expiration date 12/08/2017). At your request, *only the suspect materials that would be impacted by renovations throughout the residence were tested.*

The following suspect materials have been tested, and proved non-asbestos by the inspector:
- Tar layer, black – typical between subfloor & substrate throughout laundry room & kitchen
- Vinyl floor tile w/mastic, tan/brown/white/yellow/green/black – debris throughout attic mixed with insulation
- Cloth wire covering, black – typical of original wiring throughout attic
- Wallpaper layers, red/green/silver/tan/orange/brown/clear – debris throughout attic mixed with insulation
- Fiberboard panel, brown/off white – typical of walls throughout 2nd floor bedrooms & main floor office
- Barrier paper, beige – typical between framing & exterior walls where found
- Tar paper, black/brown – typical of original roofing paper
- Duct dust, brown – typical in bathroom ceiling vent duct
- Ceiling paper layers, beige/brown/off white/green – typical behind fiberboard ceiling panels where found

*The following suspect materials have been tested, and proved to contain asbestos*
- Vermiculite insulation, gold – typical throughout side attic spaces and intermixed with rock wool insulation throughout center bay of attic – **Trace, approx. 675 SF**
- Millboard, light gray – typical throughout side attics intermixed with vermiculite insulation — **75-80%, square footage included in above total**

At the request of the client, our inspection was limited to exposed building materials that are expected to be disturbed during the upcoming renovation. Anyone that is provided this report should be warned that it covers (or is limited to) *only the specific materials tested.* Other materials may be present in the building behind walls or above ceilings that contain asbestos.

Please find attached a detailed survey report and laboratory analysis. I appreciate the opportunity to be of service; please don't hesitate to call if you have any questions regarding this report.

*Respectfully,*

Wendy Nixon
*Wendy Nixon*



Mountain Laboratories

9922 East Montgomery Suite 13
Spokane Valley, WA 99206
(509) 922-1365 ● Fax (509) 922-1380

NVLAB

NVLAP CODE 101890-0

November 3, 2017

**IRS Environmental**
**Wendy Nixon**
**PO Box 15216**
**Spokane Valley, WA  99215-5216**

**Project: Christiansen Residence**
**Project #: 19911**

Dear Ms. Nixon,

The enclosed report details results for the analysis of the bulk sample(s) submitted to Mountain Laboratories on November 3, 2017.  Sample analysis was performed to determine asbestos type and content using Polarized Light Microscopy, supplemented by Dispersion Staining (PLM/DS).

This report includes a summary of the analytical results and chain of custody.  Analytical results are only reflective of the samples, which were tested and presented in this report.  Mountain Laboratories limits warranty to proper analysis methods and takes no responsibility for sample procurement.

It has been our pleasure providing you with these analytical services.  If you have any questions regarding this report, please do not hesitate to call us at (509) 922-1365.

Sincerely,

Heidi L McCarthy

Heidi L. McCarthy
Laboratory Manager
Mountain Laboratories
Mountain Laboratories NW, Inc.

Enclosure: 1018.43111.43120

Polarized Light Microscopy, NVLAP Accreditation

## MOUNTAIN LABORATORIES
## BULK SAMPLE ANALYSIS FOR ASBESTOS

**IRS Environmental**
**Wendy Nixon**
**PO Box 15216**
**Spokane Valley, WA  99215-5216**

**Project: Christiansen Residence**
**Project #: 19911**

Test Method: EPA-600/R-93/116: Interim Method for the Determination of Asbestos in Bulk Building Materials.       Customer #: 1018

| Laboratory No. | B17-43114 | B17-43115 | B17-43172 |
|---|---|---|---|
| Sample ID No. | 19911-04 | 19911-05 | 19911-05-A |
| Sample Description | Millboard | Wallpaper Layers | Sub Sample of 19911-05 Gray Paper Layer |
| Sample Treatment | Teased | Teased/Heated | Teased |
| Homogeneous | Yes | No | Yes |
| Layered | No | Yes | No |
| Fibrous | Yes | Yes | Yes |
| Sample Color | Light Gray | Red/Green/Silver/Tan Orange/Brown/Clear | Gray |
| Asbestos Present | Yes | No | No |
| Asbestos Type and Percentage 1. Chrysotile 2. Amosite 3. Crocidolite 4. Other | Chrysotile 75-80% | Wallpaper Layers N.D.  Clear Mastic Layers N.D. | N.D. |
| Total % Asbestos | 75-80% | None | None |
| Other Fibrous Material In Sample | | Wallpaper Layers: Cellulose 94% | Cellulose 64% Synthetic 20% Hair 5% Wood <1% |
| Non-Fibrous Material: | Binder/Filler 20-25% | Wallpaper Layers: Other <1% Binder/Filler 5%  Clear Mastic Layers: Other 100% | Binder/Filler 10% |

Date Analyzed: November 3, 2017                                                         Analyzed By: Lisa Meade

Mountain Laboratories. Mountain Laboratories NW. Inc limits warranty to proper analysis methods only and takes no responsibility for sample procurement. Mountain Laboratories. Mountain Laboratories NW. Inc  9922 E. Montgomery, Suite #13, Spokane Washington 99206 (509) 922-1365 - Fax (509) 922-1301  PLM has been known to miss asbestos in a small percentage of samples. Thus negative or <1% PLM results should be tested with either SEM or TEM  Customer is responsible for sample separation. This report may only be reproduced in full with written approval by Mountain Laboratories  Soil/Dust samples are not covered under NVLAP Accreditation.

Sample results must not be used by the customer to clean product certification approval, or endorsement by NVLAP, NIST, or any agency of the Federal Government

## MOUNTAIN LABORATORIES
## BULK SAMPLE ANALYSIS FOR ASBESTOS

**IRS Environmental**
**Wendy Nixon**
**PO Box 15216**
**Spokane Valley, WA 99215-5216**

**Project: Christiansen Residence**
**Project #: 19911**

Test Method: EPA-600/R-93/116: Interim Method for the Determination of Asbestos in Bulk Building Materials.    Customer #: 1018

| Laboratory No. | B17-43116 | B17-43117 | B17-43118 |
|---|---|---|---|
| Sample ID No. | 19911-06 | 19911-07 | 19911-08 |
| Sample Description | Vermiculite Insulation | Fiberboard Panel | Barrier Paper |
| Sample Treatment | Teased | Teased/Crushed Dissolved | Teased |
| Homogeneous | Yes | No | Yes |
| Layered | No | Yes | No |
| Fibrous | Yes | Yes | Yes |
| Sample Color | Gold | Brown/Off White | Beige |
| Asbestos Present | Yes | No | No |
| Asbestos Type and Percentage<br>1. Chrysotile<br>2. Amosite<br>3. Crocidolite<br>4. Other | Actinolite Trace | N.D. | N.D. |
| Total % Asbestos | Trace | None | None |
| Other Fibrous Material In Sample | Wood <1%<br>Mineral Wool <1%<br>Cellulose <1%<br>Hair <1% | Wood 94% | Cellulose 98% |
| Non-Fibrous Material: | Vermiculite 92%<br>Aggregate <1%<br>Other <1%<br>Bug Parts <1% | Binder/Filler 5%<br>Paint <1%<br>Other 100% | Binder/Filler 2% |

Date Analyzed: November 3, 2017                                                                 Analyzed By: Lisa Meade

Mountain Laboratories, Mountain Laboratories NW, Inc. limits warranty to proper analysis methods only and takes no responsibility for sample procurement. Mountain Laboratories, Mountain Laboratories NW, Inc., 9922 E. Montgomery Suite #13, Spokane Washington 99206 (509) 922-1365 - Fax (509) 922-1380. PLM has been known to miss asbestos in a small percentage of samples. Thus negative or <1% PLM results should be tested with either SEM or TEM. Customer is responsible for sample separation. This report may only be reproduced in full with written approval by Mountain Laboratories. Soil Data samples are not covered under NVLAP Accreditation.

Sample results must not be used by the customer to claim product certification, approval, or endorsement by NVLAP, NIST, or any agency of the Federal Government.

# EXHIBIT "G"





# EXHIBIT "H"

# Mountain Laboratories

9922 East Montgomery Suite 13
Spokane Valley, WA 99206
(509) 922-1365 • Fax (509) 922-1380

NVLAP®

NVLAP LAB CODE 101890-0

February 27, 2018

**Jack & Marie Christiansen**                           **Project Name: Sample 3-Siding Shingles**
**P.O. Box 116**
**Ahsahka, ID 83520**

Dear Mr. & Mrs. Christiansen,

The enclosed report details results for the analysis of the bulk sample(s) submitted to Mountain Laboratories on February 27, 2018.  Sample analysis was performed to determine asbestos type and content using Polarized Light Microscopy, supplemented by Dispersion Staining (PLM/DS).

This report includes a summary of the analytical results and chain of custody.  Analytical results are only reflective of the samples, which were tested and presented in this report.  Mountain Laboratories limits warranty to proper analysis methods and takes no responsibility for sample procurement.

It has been our pleasure providing you with these analytical services.  If you have any questions regarding this report, please do not hesitate to call us at (509) 922-1365.

Sincerely,

Heidi L. McCarthy
Laboratory Manager
Mountain Laboratories
Mountain Laboratories NW, Inc.

Enclosure: 2801.7018.70019H

Polarized Light Microscopy, NVLAP Accreditation

## MOUNTAIN LABORATORIES
## BULK SAMPLE ANALYSIS FOR ASBESTOS

**Jack & Marie Christiansen**
**P.O. Box 116**
**Ahsahka, ID 83520**

**Project Name: Sample 3-Siding Shingles**

Test Method: EPA-600/R-93/116: Interim Method for the Determination of Asbestos in Bulk Building Materials.     Customer #: 2801

| Laboratory No. | B18-7018 | B18-7019 | |
|---|---|---|---|
| Sample ID No. | 1 | 2 | |
| Sample Description | House Shingles Found by House | House Shingles Found Down Below House | |
| Sample Treatment | Teased/Crushed | Teased/Crushed | |
| Homogeneous | No | No | |
| Layered | Yes | Yes | |
| Fibrous | Yes | Yes | |
| Sample Color | Gray/Tan | Gray/Tan | |
| Asbestos Present | Yes | Yes | |
| Asbestos Type and Percentage 1. Chrysotile 2. Amosite 3. Crocidolite 4. Other | Chrysotile 15-20% | Chrysotile 15-20% | |
| Total % Asbestos | 15-20% | 15-20% | |
| Other Fibrous Material In Sample | | | |
| Non-Fibrous Material: | Other 80-85% Paint not analyzed. | Other 80-85% Paint not analyzed. | |

Date Analyzed: February 27, 2018                                                   Analyzed By: Heidi L. McCarthy

Mountain Laboratories, Mountain Laboratories NW, Inc. limits warranty to proper analysis methods only and takes no responsibility for sample procurement. Mountain Laboratories, Mountain Laboratories NW, Inc., 9922 E. Montgomery Suite #13, Spokane Washington 99206 (509) 922-1365 - Fax (509) 922-1380. PLM has been known to miss asbestos in a small percentage of samples. Thus negative or <1% PLM results should be tested with either SEM or TEM. Customer is responsible for sample separation. This report may only be reproduced in full with written approval by Mountain Laboratories. Soil/Dust samples are not covered under NVLAP Accreditation.

Sample results must not be used by the customer to claim product certification, approval, or endorsement by NVLAP, NIST, or any agency of the Federal Government.

PAID **CHAIN OF CUSTODY RECORD**

*Mountain Laboratories*

9922 E Montgomery Drive, Suite 13
Spokane Valley, WA 99206
Phone 509-922-1365
Fax 509-922-1380
Email heidi@mountainlaboratories.com

| Billing Information (if different) |
|---|
| Contact Name, Address & Phone |

Project Name: _____

Project No: _____

Results: (check box)
FAX:
PHONE: X
E-MAIL: X
MAIL:

| Customer Information | | | ANALYSIS REQUIRED | | | TURNAROUND | |
|---|---|---|---|---|---|---|---|
| Maria Chittenden + Jack | | | # OF CONTAINERS | PLM - BULK | LEAD-AIR, PAINT, WIPE | ☐ 1 HR  ☐ 3 HR  ☑ 24 HR | ☐ 48 HR  ☐ 3 Day  ☐ 5 Day |
| SAMPLE # | SAMPLE DESCRIPTION/ID | DATE/TIME | | | | REMARKS | |
| 1 | House Shingles Read by house | 2/27/ 11 am | 1 | | | | |
| 2 | House Shingles Read down below house | 2/27/ | 1 | | | Sent as blue | |

| RELEASED BY (Signature) | DELIVERY METHOD | RECEIVED BY (Signature) | COMPANY | DATE / TIME RECEIVED | CONDITION |
|---|---|---|---|---|---|
| | Hand | Kaytlyn McCarthy | Mountain Laboratories | 2/27/18 @ 11am | Good |

# EXHIBIT "I"



**2**

Electronically Filed
9/5/2019 2:41 PM
Second Judicial District, Clearwater County
Carrie Bird, Clerk of the Court
By: Christy Gering, Deputy Clerk

Gregory M. George, ISB #9937
Macomber Law, PLLC
1900 Northwest Boulevard, Suite 110
Coeur d'Alene, ID 83814
Telephone: 208-664-4700
greg@macomberlaw.com
*Attorneys for Plaintiffs*
*Jack and Marie Christiansen*

P. Thomas Clark, ISB #1329
Clark & Feeney, LLP
1229 Main Street, Suite 106
P.O. Box 285
Lewiston, ID 83501-0285
Telephone: 208-743-9516
Facsimile: 208-746-9160
tclark@clarkandfeeney.com

## IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF
## THE STATE OF IDAHO, IN AND FOR THE COUNTY OF CLEARWATER

| | |
|---|---|
| JACK CHRISTIANSEN and MARIE CHRISTIANSEN, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>THANE SYVERSON and REBEKAH SYVERSON, husband and wife, and DOES 1-10,<br><br>Defendants. | Case No.: CV18-19-0246<br><br>**ACKNOWLEDGMENT OF SERVICE** |

The undersigned counsel for Defendants THANE SYVERSON and REBEKAH SYVERSON, husband and wife, hereby acknowledges, on behalf of said Defendants, that on September 5, 2019 they received service of the Summons and Complaint for said Defendants pursuant to prior agreement with Plaintiff's counsel permitting service of the same, via electronic mail to the undersigned. This Acknowledgment of Service is made subject to a reservation of any defenses that may be available under I.R.C.P. 12(b).

/ / / / / / /

**ACKNOWLEDGMENT OF SERVICE**                                                                                          1

Dated this 5th day of September, 2019.

RAMSDEN, MARFICE, EALY & HARRIS, LLP

By: */s/Michael A. Ealy*
    Michael A. Ealy
    Attorney for Defendants

**3**

# Case Information

CV18-19-0246 | Jack Christiansen, Marie Christiansen Plaintiff, vs. Thane Syverson, Rebekah Syverson Defendant.

| Case Number | Court | Judicial Officer |
| --- | --- | --- |
| CV18-19-0246 | Clearwater County District Court | FitzMaurice, Gregory |
| File Date | Case Type | Case Status |
| 08/28/2019 | AA- All Initial District Court Filings (Not E, F, and H1) | Active - Pending |

# Party

Plaintiff
Christiansen, Jack

Active Attorneys ▾
Lead Attorney
George, Gregory Michael
Retained

Plaintiff
Christiansen, Marie

Active Attorneys ▾
Lead Attorney
George, Gregory Michael
Retained

Defendant
Syverson, Thane

Defendant
Syverson, Rebekah

# Events and Hearings

08/28/2019 Initiating Document - District

08/28/2019 Complaint Filed ▼

    Comment
    and Demand for Jury Trial

08/28/2019 Summons Issued ▼

    Comment
    Summons (Thane Syverson)

08/28/2019 Summons Issued ▼

    Comment
    Summons (Rebekah Syverson)

08/28/2019 Civil Case Information Sheet

09/05/2019 Acceptance of Service ▼

    Comment
    Acknowledgment of Service

## Financial

Christiansen, Jack

| | | | | |
|---|---|---|---|---|
| Total Financial Assessment | | | | $221.00 |
| Total Payments and Credits | | | | $221.00 |
| 8/28/2019 | Transaction Assessment | | | $221.00 |
| 8/28/2019 | EFile Payment | Receipt # 01937-2019-R18 | Christiansen, Jack | ($221.00) |