IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACK CHRISTIANSEN and MARIE CHRISTIANSEN,<br><br>                   Plaintiffs,<br><br>vs.<br><br>THANE SYVERSON, REBEKAH SYVERSON, and DOES 1-10,<br><br>                   Defendants. | 3:19−cv−365−DWM<br><br>ORDER |

      This case is a dispute over a real property disclosure statement. In 2010, Plaintiffs Jack and Marie Christiansen (the "Christiansens") purchased a property at 323 Barley Drive in Lenore, Idaho (the "Property"). The Property is approximately twenty (20) acres with a refurbished farmhouse. In September 2017, the Christiansens were doing repairs on the Property and discovered vermiculite in the attic, which later tested positive for asbestos. Further investigation uncovered asbestos-contaminated construction remnants from a previous house remodel, performed by Defendants Thane and Rebekah Syverson (the "Syversons"). When the Syversons had sold the property to Capital Relocation Services, LLC, they had completed a disclosure statement averring

1

there was no asbestos or other hazardous substance on or in proximity to the Property. (*See* Doc. 1 at 28–31.)

On August 28, 2019, the Christiansens filed the present action in the District Court for the Second Judicial District of the State of Idaho in and for the County of Clearwater. The Syversons removed the case on September 23, 2019. (Doc. 1.) The Complaint alleges claims of fraud and also seeks attorney fees and costs. (Doc. 1 at 8–18.) The case is set for jury trial on January 11, 2021. (Doc. 14.) There are two pending motions. The Christiansens seek to exclude or limit the testimony of the Syversons' retained liability expert, Michael N. Cooper. (Doc. 17.) Conversely, the Syversons seek to exclude or limit the testimony of the Christiansens' retained damage expert, Terry R. Rudd. (Doc. 18.) They are addressed in turn.

**ANALYSIS**

**I.     Cooper**

Parties are required to make their expert disclosures at the time and in the manner ordered by the Court. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). If a party fails to properly disclose this information, the party cannot use the non-disclosed information at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The

parties were reminded of this potential sanction in the Scheduling Order, which states: "An inadequate report or disclosure may result in exclusion of the expert's opinions at trial even though the expert has been deposed." (Doc. 14 at ¶ 11(c).)

Here, the parties' liability expert disclosure deadline was July 15, 2020. (Doc. 14 at ¶ 1.) The parties, nonetheless, stipulated to the extension of that deadline to July 22, 2020. (*See* Doc. 17-1 at 7.) On July 22, the Syversons disclosed Michael N. Cooper of Industrial Hygiene Resources as a liability expert. (*See id.* at 16–29.) That document identifies Cooper's experience, work history, and ten opinions he is anticipated to offer at trial. (*Id.*) Attached to that disclosure are his CV, (*id.* at 17-1 at 22–28), and his compensation agreement, (*id.* at 29). What that disclosure does not contain, however, is a separate expert report prepared and signed by Cooper. The document reveals no reasoning or opinions other than topic areas to be disclosed at some future date. Thus, the Christiansens argue that the July 22, 2020 expert disclosure is insufficient under Rule 26(a)(2)(B). Their argument is well taken.

Rule 26(a)(2) provides for disclosures by two types of expert: those retained or specifically employed to give expert testimony in a case, Fed. R. Civ. P. 26(a)(2)(B), and those who are not retained or specially employed, but who nonetheless may provide expert testimony, Fed. R. Civ. P. 26(a)(2)(C). An expert

who falls into the first category is required to provide an expert report. Fed. R. Civ. P. 26(a)(2)(B). More specifically:

> (B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

Here, there is no dispute that Cooper did not submit a separate report. The Syversons argue that is not a fatal fact, however, because Cooper signed the July 22 disclosure. They therefore argue that the Christiansen's challenge is one of form over substance. They are wrong. While Cooper signed the July 22 disclosure, that signature line indicates that the disclosure was merely "approved by" him. (*See* Doc. 17-1 at 20.) Rule 26(a)(2)(B) requires that the expert "prepare[]" the report. Moreover, the rule requires that the report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." While the July 22 disclosure outlines 10 topic areas, it does not

provide a basis for those opinions. The closest it comes is to generally state the types of documents Cooper reviewed. But even the Syversons recognized that was insufficient as the July 22 disclosure states: "Mr. Cooper needs to complete a site inspection in order to fully analyze and prepare his opinions and the Defendants have made a request for a site inspection for this purpose. After the site inspection is completed, *Mr. Cooper will prepare a written report outlining his opinions and the basis therefor.*" (Doc. 17-1 at 19 (emphasis added).) Thus, the "report" as disclosed does not meet the requirements of Rule 26(a)(2)(B).

The next question then is whether the necessary information could be added under Rule 26(e), which imposes a duty to supplement disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." In the limited disclosure provided, the Syversons and Cooper stated that they "reserve the right to change, alter, amend, and/or expand his expert opinions that he will offer at the time of trial as discovery is still ongoing and the site inspection ha[d] not yet been completed." (Doc. 17-1 at 19.) They are wrong once again. "[A] Rule 26(e) supplement may only be filed to correct inaccuracies or fill in the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Guinnane v. Dobbins*, 2020 WL 4696809, at *4 (D. Mont. Aug. 13, 2020) (internal quotation marks omitted). "Put differently, a party cannot use untimely supplementation under

5

Rule 26(e) to provide information, reasoning, or opinions that Rule 26 requires be disclosed in the critical initial disclosure." *Id.* (internal quotation marks omitted).

The July 22 report states that Cooper could not complete his expert opinions until after a site visit. It does not, however, explain why a site visit was not possible in the preceding seven months or why one could not occur by the July 22 deadline. The email exchange provided by counsel for the Christiansens indicates they were even willing to go beyond that deadline, (*see* Doc. 17-1 at 10–14), and that a site visit finally did occur on August 20, 2020, (*see* Doc. 20-1 at ¶ 4). But no report has been disclosed even after that visit. (*Id.* at ¶ 5.) And, even if Cooper were to author a report now, that report would not be supplementation under Rule 26(e) because the information contained therein could have, and should have, been in the initial report.

Because Cooper's expert disclosure is insufficient under Rule 26, it must be excluded because the Syversons have not shown that their failure to comply with the rules was either substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Syversons' only response has been to maintain the sufficiency of their present disclosure. Because that argument fails for the reasons discussed above, Cooper's expert testimony is excluded in its entirety.

**II.    Rudd**

Admissibility of expert opinion is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In its gatekeeping role, the district court must determine that the proffered opinions are both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Expert opinions are relevant if they "logically advance a material aspect of the party's case." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (internal quotation marks omitted). Expert opinions are reliable if they are the product of sound methods and principles. *Id.* The focus is on the expert's process, not the correctness of his or her conclusions. *Daubert*, 509 U.S. at 595.

District courts have broad discretion in determining how to assess an expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). While the inquiry must be specific to the facts of each case, *id.*, the Supreme Court has identified four factors to consider: (1) whether the theory or

7

technique has been tested, (2) whether the theory or technique has been subject to peer review and publication, (3) the potential error rate, and (4) whether the theory or technique is generally accepted within the relevant scientific community, *Daubert*, 509 U.S. at 593–94. The list is non-exhaustive and may not be applicable in all cases. *Id.* at 594. Signs of a faulty methodology include the failure to rule out other causes, forming opinions before examining the data, and conclusions that differ from those of other professionals who followed the same process. *Clarr v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994); *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Here, the Syversons seek to exclude the testimony of Terry R. Rudd on the grounds that his report does not provide a basis for the figures included in his "cost to cure" valuation of the Property. (Doc. 18.) The Syversons also note that Rudd's valuation includes costs for surveying, excavation, abatement efforts, and attorney fees, areas in which they argue he is not qualified to opine. (*Id.* at 3.) But these challenges are not fundamental flaws subject to the exercise of the Court's gatekeeping authority. The Syversons have not presented any evidence that the process underlying Rudd's "cost-to-cure" analysis is unreliable; rather, they raise questions of weight and credibility best addressed through cross-examination.

On November 29, 2019, Rudd prepared a 35-page Appraisal Report for the Property. (Doc. 18-1 at 10–46.) That appraisal was timely disclosed on July 22,

8

2020.  (*Id.* at 8.)  As a result, any challenge to its sufficiency should have been raised by August 5, 2020.  (Doc. 14 at ¶ 11(c).)  The Syversons' motion, filed September 24, 2020, is therefore untimely and their objection waived.  (*Id.*)

On the merits, in his report Rudd explains why he chose a "cost-to-cure" valuation and the amounts he used in his calculations.  (*See* Doc. 18-1 at 11–13.)  He further provides a detailed list of "comps" for similar properties, (*id.* at 14–15), and numerous photos and maps of the Property itself, (*see, e.g.*, *id.* at 18).  He also includes a list of "Assumptions and Limiting Conditions" for his opinions, which includes disclaimers related to engineering activities and legal matters.  (*Id.* at 41.)  Finally, Rudd's CV shows over fifty years of appraisal experience.  (*Id.* at 42–46.)  Rudd is therefore qualified to opine on those matters identified in his report and his report discloses the factual basis to the extent required by Rule 26(a)(2)(B).  The Syversons may, of course, question Rudd on his valuations and he will be limited to the information disclosed in answering those inquiries.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Christiansens' motion (Doc. 17) is GRANTED.

IT IS FURTHER ORDERED that the Syversons' motion (Doc. 18) is DENIED.

DATED this  13th day of October, 2020.

9

_____ 10:22 AM
Donald W. Molloy, District Judge
United States District Court